UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**IN RE: YAMAHA MOTOR CORP. RHINO**          Case No. 3:09-MD-02016-JBC
**ATV PRODUCTS LIABILITY LITIGATION**        MDL No. 2016

**KENNETH DAUGHERTY,**
    **Plaintiff**

v.                                            Case No. 3:09-CV-143-JBC

**YAMAHA MOTOR CORPORATION, USA, ET AL.,**
    **Defendants**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court upon the motion of the defendants to dismiss plaintiff's claims for strict liability and exemplary damages (R. 55).  Because the court concludes that Michigan law applies and that Michigan law does not provide for a separate strict liability claim but that the plaintiff has pled sufficiently a cause of action for exemplary damages, the court will grant the defendants' motion in part and deny it in part.

**I.       Background**[1]

On September 15, 2005, Kenneth Daugherty was operating a Yamaha Rhino side-by-side utility vehicle ("Rhino") and was injured when the Rhino rolled over.

---

[1] For the purpose of resolving this motion, the court accepts as true all well-pleaded allegations of the opposing party, the plaintiff.  *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

The accident took place in Inkster, Michigan. Daugherty is a citizen of South Carolina.

He brought the instant action against Yamaha Motor Corporation, USA ("YMUS"); Yamaha Motor Co., Ltd. ("YMC"); and Yamaha Motor Manufacturing Corporation of America ("YMMC"). In his Amended Complaint, he seeks damages incurred as a result of the accident and alleges four counts against the defendants: strict liability for product defect, negligence, breach of warranties under the Uniform Commercial Code, and exemplary damages.[2]

## II. Analysis

The defendants request that the court dismiss count one of Daugherty's Amended Complaint, which makes a claim for relief based on a theory of strict liability, and count four, which claims exemplary damages.

A.   Choice of Law

First, the court must determine whether the law of Michigan or the law of South Carolina will apply to these claims for relief. The court concludes that based on the principle of *lex loci delicti*, Michigan law will govern.

The plaintiff brought this action in the U.S. District Court for the District of South Carolina based on diversity jurisdiction. This matter was transferred to this

---

[2]Prior to the filing of the Amended Complaint, defendants filed multiple motions to dismiss claims made in the Complaint (R. 20, 21, 34). Those motions will be denied as moot.

2

court for inclusion in a multi-district litigation proceeding, and this court must apply the state law that would have been applied by the transferor court. *See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (observing that "[w]hen analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located" but "[w]hen considering questions of state law, . . . the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation"). In choosing which state's law to apply, the South Carolina district court would have applied South Carolina choice-of-law rules, and this court therefore must do the same. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) ("In diversity cases, a federal court applies the choice of law rules of the forum."); *see also Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631,635 (4th Cir. 2005).

"Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the *lex loci delicti*, the law of the state in which the injury occurred." *Nash v. Tindal*, 650 S.E.2d 81, 83 (S.C. 2007). Because the plaintiff's accident occurred in Michigan, the parties agree that under basic principles of *lex loci delicti*, the substantive law of Michigan would apply to the strict liability claim and claim for exemplary damages brought by the plaintiff.

However, the plaintiff argues that an exception to this general principle applies in this case. "It is a well settled exception to the traditional conflicts-of-law

3

rule of *lex loci delicti* that the law of the forum and not the law of the place of the wrong is controlling whenever the law of the place of the wrong is contrary to the public policy of the forum state." *Mizell v. Eli Lilly & Co.*, 526 F. Supp. 589, 596 (D.C. S.C. 1981) (citing 29 A.L.R. 3d 603 (1970)); *see also Boone v. Boone*, 546 S.E. 2d 191, 193 (S.C. 2001) (identifying the "public policy" exception to *lex loci delicti* principle). According to the plaintiff, the court should apply South Carolina law because applying Michigan law would be contrary to the public policy of South Carolina. The plaintiff further asserts that it is premature for the court to resolve this issue because more discovery is necessary to develop fully the reasons that applying Michigan law would be against South Carolina public policy.

The plaintiff contends that because he has relied on Medicaid benefits funded by the state of South Carolina and owes debts to healthcare providers in that state, application of Michigan law would violate the public policy of South Carolina. The court is not convinced. Nor does the court see that further discovery would affect the resolution of this issue.

Presumably, the plaintiff's argument rests on the inference that application of Michigan law would reduce the amount of damages he might recover in the action, which would then decrease his ability to support himself and repay his healthcare bills. Assuming for the sake of argument that Michigan law would decrease plaintiff's likelihood of recovery, such a situation does not call for application of the public policy exception to *lex loci delicti*, as recognized by South Carolina courts.

4

"To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of [South Carolina] laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens." *Rauton v. Pullman Co.*, 191 S.E. 416, 422 (S.C. 1937) (citations omitted); *see Thornton v. Cessna Aircraft Co.*, 703 F.Supp 1228 (D.S.C. 1988), *aff'd*, 886 F.2d 85 (4th Cir. 1989) (noting that *Rauton* "shed some light on what constitutes the public policy of South Carolina, at least for the purpose of deciding whether to reject foreign law as contrary to the public policy"). South Carolina courts have chosen to apply the law of South Carolina rather than foreign law when the foreign law is in direct conflict with South Carolina public policy that has been clearly articulated in case law or statute. *See Boone v. Boone*, 546 S.E. 2d 191 (S.C. 2001) (refusing to apply Georgia's doctrine of interspousal immunity to bar wife's tort action against husband because South Carolina had expressly abolished the doctrine and finding allowing suit by unmarried persons but not married persons against "natural justice"); *Mizell*, 526 F. Supp. 589, 594-96 (refusing to apply California market-share theory of liability because it was a "novel" theory of tort law and a "radical departure" from South Carolina products liability law).

Under South Carolina law, a court will not refuse to apply the law of the state where the wrong occurred simply because the foreign law is different and operates to reduce – or even to bar completely – the plaintiff's ability to recover.

5

*See Dawkins v. State*, 412 S.E.2d 407, 408 (S.C. 1991) (finding no violation of public policy in applying Georgia tort law that precluded plaintiff's recovery because "[t]he 'good morals or natural justice' of [South Carolina] are not violated when foreign law is applied to preclude a tort action for money damages . . . even if recovery may be had upon application of South Carolina law"); *Rauton*, 191 S.E. at 419 (finding no violation of public policy in applying Mexican law that did not allow recovery for physical pain); *see also Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 88-89 (4th Cir. 1989) (finding no violation of public policy in applying Tennessee statute of repose which barred plaintiff's claim as untimely).[3]

Here, the plaintiff has offered no argument that the Michigan law is a "radical departure" from South Carolina law. Nor is it likely he could do so successfully. Michigan's elimination of strict liability as a third viable theory of liability in a products liability action is not a "radical departure" from South Carolina law. Michigan courts have explained that the strict liability theory has been eliminated because its proof overlaps with that required for breach of implied warranty. *See Stephens v. G.D. Searle & Co.*, 602 F.Supp. 379, 382 (E.D. Mich.

---

[3]The plaintiff urges the court to delay its ruling on the choice-of-law issue until he has completed further discovery. He does not elaborate as to what sort of information, still uncovered, is necessary to his argument. He hints, however, that more discovery is needed to relate completely to the court the extent of his financial obligations and indebtedness to the state of South Carolina. Given the court's conclusion that a decrease in the plaintiff's ability to pay his bills does not justify applying the public policy exception, the court finds that further discovery into the plaintiff's financial situation is unnecessary.

1985) (explaining that Michigan courts have "rejected the use of strict liability as a separate theory of recovery in products liability cases" because the "proofs that would be presented under a strict liability theory in a product case would overlap with the proofs that would be presented under an implied warranty theory. The addition of the third count adds only confusion, not substance." (citing *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977)). South Carolina courts similarly have noted the redundancy of the two causes of action. *See, e.g.*, *Jackson v. Bermuda Sands, Inc.*, — S.E.2d —, 2009 WL 1037043 (S.C. Ct. App. 2009) (noting that although a products liability action could be "brought under several theories, including negligence, strict liability, and warranty," plaintiff must establish the same three elements regardless of theory used, although negligence also required additional proof of breached duty). Accordingly, elimination of this theory of liability does not go against the body of products liability law in South Carolina or otherwise against "good morals or natural justice," and there is no reason for this court to refuse to apply Michigan law.[4]

B.   Application of Michigan Law

---

[4] It is arguable that plaintiff's decreased ability to repay debts in South Carolina would be "prejudicial to the general interests" of the people of South Carolina. *Rauton*, 191 S.E. at 422. However, the plaintiff has not offered, and the court has not found, any South Carolina case supporting that proposition. Furthermore, the unwillingness of South Carolina courts to refuse to apply foreign law merely because of its detrimental effect on plaintiff's potential recovery, as discussed above, suggests that South Carolina courts would not interpret this phrase to encompass this factual situation.

      1.      Strict-Liability Claim

The defendants argue that under Michigan products liability law, there is no independent cause of action for strict liability in tort; rather, a plaintiff may bring a negligence claim and a claim for breach of implied warranty. *Johnson*, 254 N.W.2d 569, 571. The plaintiff apparently concedes that no separate claim for strict liability in tort can be brought in Michigan, arguing that the strict-liability claim as pled is sufficient to support a claim for breach of implied warranty. The plaintiff's argument admits that the strict-liability claim duplicates his breach-of-implied-warranty claim stated in Count III, and therefore the court will dismiss that strict-liability claim.

      2.      Exemplary Damages Claim

The defendants contend that the plaintiff's claim for exemplary damages fails because the plaintiff has not pled sufficient facts to meet the threshold requirement for a claim for exemplary damages.[5] The plaintiff responds that any ruling on this

---

[5] The defendants, relying on *Veselenak v. Smith*, 327 N.W. 2d 261 (Mich. 1982), also argue that the exemplary damages claim duplicates the plaintiff's claim for compensatory damages for mental aguish and suffering made in the other counts of his Amended Complaint. The *Veselenak* court reversed a jury verdict granting the plaintiff exemplary damages and actual damages, finding that the plaintiff had received double compensation for the same injuries of mental distress and anguish. *Id.* at 576. The court's analysis was based on consideration of the jury instructions, which the court concluded directed the jury to consider identical evidence of plaintiff's mental distress and anguish when determining both exemplary and ordinary damages. *Id.* As the defendants point out, the plaintiff claims damages for mental distress anguish in the other counts of his complaint. However, the question of whether potential jury awards of ordinary and exemplary damages would compensate the plaintiff for the same injury obscures the question of whether the plaintiff has pled a sufficient basis for an award of exemplary

issue is premature because there has been no discovery and the question should be submitted to a jury. While the question of whether the evidence supports a finding that plaintiff deserves an award for exemplary damages is a question for a jury, the court may consider whether the complaint, on its face, alleges facts sufficient to support the plaintiff's claim.

"To establish that they are entitled to exemplary damages, plaintiffs must establish that the act giving rise to the damages is voluntary, that the voluntary act inspired feelings of humiliation, outrage, and indignity, and that the conduct was malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiffs' rights." *Ramik v. Darling Intern., Inc.*, 60 F.Supp.2d 680, 684-85 (E.D.Mich.1999) (citing *Veselenak v. Smith*, 327 N.W.2d 261 (1982)). "The theory is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done to the plaintiff's feelings." *McPeak v. McPeak*, 593 N.W.2d 180, 183 (Mich. Ct. App. 1999) (citing *Kewin v. Massachusetts Mut. Life Ins., Co.*, 295 N.W.2d 50, 55 (Mich. 1980)).

Had the plaintiff alleged only that the defendants acted negligently in causing his injuries, his claim for exemplary damages would not survive this motion to

---

damages that would not doubly compensate him. It is the latter question that concerns the court at this juncture, and it is addressed by defendants' alternate argument, which is discussed above. *But see German Free State of Bavaria v. Toyobo Co., Ltd.*, 480 F.Supp.2d 958 (W.D. Mich. 2007) (dismissing claim for exemplary damages because "such a claim does not exist in Michigan and is rather a form of actual damages and not a separate claim").

9

dismiss. *See Veselenak*, 327 N.W. 2d at 264 ("Due to the required mental element, negligence is not sufficient to justify an award of exemplary damages."). However, the plaintiff also alleges that the defendants acted intentionally in breaching implied and express warranties. Exemplary damages are available in products liability actions in Michigan. *See Parr v. Central Soya Company, Inc.*, 732 F.Supp 738 (E.D. Mich. 1990) (noting that despite general rule that exemplary damages not available in action for breach of contract, products liability claim sounds in tort, not contract, and exemplary damages thus available).

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)(citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In order to avoid dismissal under Rule 12(b)(6), a plaintiff must provide the grounds for his entitlement to relief. He need not provide "a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* — U.S. —, 127 S. Ct. 2197, 2200 (2007) (citation omitted).

The plaintiff alleges that the defendants knew the Rhino was unreasonably dangerous but "consciously chose to conceal, suppress and misrepresent material

10

information" and "affirmatively misrepresented the Rhino as a stable, safe and suitable all-terrain vehicle." Am. Compl. ¶ ¶ 22, 30. Accepting these factual allegations as true, it is not clear to the court that "no relief could be granted under any set of facts that could be proved consistent with the[se] allegations." *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005) (citation omitted) (discussing when dismissal of claim warranted).

### III. Conclusion

According, **IT IS ORDERED** that the defendants' motion to dismiss (R. 55) is **GRANTED in part and DENIED in part**. Count I of the plaintiff's Amended Complaint if **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that those motions to dismiss filed by the defendants prior to the plaintiff's filing of his Amended Complaint (R. 20, 21, 34) are **DENIED as moot**.

Signed on September 1, 2009

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**